1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SALLY HARDY,

11            Plaintiff,                    No. CIV S-08-1327 GGH

12        vs.

13
     MICHAEL J. ASTRUE,                     ORDER
14   Commissioner of
     Social Security,
15
              Defendant.
16   _____/

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

20   Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

21   Judgment is GRANTED, and the Clerk is directed to enter judgment for the defendant.

22   BACKGROUND

23            Plaintiff was born on January 19, 1969.  (Tr. at 31).  In October or November

24   2002, plaintiff suffered an on-the job injury.  (Tr. at 19.)   An MRI suggested a rotator cuff tear.

25   (Tr. at 19.) In January 15, 2004, she had surgery to repair the rotator cuff.  (Tr. at 19)  Since that

26   time, plaintiff has suffered shoulder, neck and back pain.

Plaintiff applied for disability benefits on January 13, 2005.  (Tr. at 15).  Plaintiff alleged that she was unable to work due to degenerative joint disease, osteoarthritis of the right shoulder, cervical and lumbar degenerative disc disease and depression.  (Tr. at 33. )  In a decision dated November 14, 2007, ALJ L. Kalei Fong made the following findings:[1]

1.  The claimant has not engaged in substantial gainful activity since January 13, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*) .

2.  The claimant has the following severe combination of impairments: status post right rotator cuff repair, right shoulder strain, chronic obstructive pulmonary disease, mild degenerative disc disease of the lumbar spine, and bilateral carpal tunnel syndrome (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1        Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

2    4.    After careful consideration of the entire record, the
         undersigned finds that the claimant has the residual
3        functional capacity to lift and carry 10 pounds frequently
         and 20 pounds occasionally; stand and walk six hours in an
4        eight-hour day; sit six hours in an eight-hour day,
         occasionally [sic] climbing of ropes and scaffolds and
5        occasional crawling; frequent climbing of ramps, stairs and
         ladders, balancing, stooping, kneeling, and crouching, and
6        occasional overhead reaching with the right upper
         extremity.

7
     5.    The claimant is capable of performing past relevant work as
8        a day care provider.  This work does not require the
         performance of work related activities precluded by the
9        claimant's residual functional capacity (20 CFR 416.965.)

10   6.    The claimant has not been under a disability, as defined in
         the Social Security Act, since January 13, 2005 (20 CFR
11       416.920(f)), the date the application was filed.

12   (Tr. at 17-22.)

13   ISSUE PRESENTED

14       Plaintiff has raised the following issues: A) whether the ALJ failed to credit Dr.

15   Sharma's opinion without a legitimate reason for doing so and without recontacting him for

16   clarification of his opinions; B) whether the ALJ failed to credit plaintiff's testimony as to the

17   nature and extent of her pain and functional limitations; C) whether the ALJ failed to properly

18   assess plaintiff's Residual Functional Capacity (RFC) and improperly found her capable of

19   performing her past work or, in the alternative, not disabled based on the grids without the expert

20   testimony of a vocational expert.

21   LEGAL STANDARDS

22       The court reviews the Commissioner's decision to determine whether (1) it is

23   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

24   the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

25   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

26   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

3

as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d

625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

"The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

          A.  Whether the ALJ Failed to Credit Dr. Sharma's Opinions

          The background to this claim is as follows.

          At the conclusion of plaintiff's hearing, the ALJ determined that plaintiff should

have a neural evaluation to help him understand what was causing her neck and back problems.

(Tr. at 241.)  On May 17, 2007, Dr. Sharma performed this examination.  (Tr. at 203-208.)  Dr.

Sharma did not review plaintiff's medical records at this time.  (Tr. at 203.)  Dr. Sharma

concluded that plaintiff had the following ailments:

       1.  Chronic neck pain with intermittent radicular pain in upper extremities.
       2.  Chronic low back pain with intermittent radiculopathy in the lower extremities.
       3.  Bilateral carpal tunnel syndrome.
       4.  High cholesterol.
       5.  Gastroesophageal reflux disease.
       6.  Right shoulder pain, status post right rotator cuff repair.

(Tr. at 208.)

          Dr. Sharma concluded that plaintiff could frequently carry up to 10 pounds and

occasionally carry up to 20 pounds.  (Tr. at 211.)  Dr. Sharma determined that plaintiff could sit,

stand and walk for up to one hour at one time without interruption.  (Tr. at 212.)  Dr. Sharma

determined that plaintiff could sit, stand and walk for a total of 6 hours in an 8 hour day.  (Tr. at

212.)  Dr. Sharma determined that plaintiff could occasionally perform the following activities

with her right hand: overhead reaching, all other reaching, handling, fingering, feeling, push/pull.

(Tr. at 213.)  Dr. Sharma determined that plaintiff could continuously perform the following

activities with her left hand: overhead reaching, all other reaching and push/pull.  (Tr. at 213.)
Plaintiff could occasionally perform the following activities with her left hand: handling,
fingering and feeling.  (Tr. at 213.)  Dr. Sharma determined that plaintiff could continuously
operate foot controls with her left and right feet.  (Tr. at 213.)  Finally, Dr. Sharma determined
that plaintiff could occasionally climb stairs and ramps, climb ladders, balance, stoop, kneel,
crouch and crawl.  (Tr. at 214.)

           In response to interrogatories from plaintiff's counsel, on September 9, 2007, Dr.
Sharma offered new opinions regarding plaintiff's conditions.  (Tr. at 218-219.)  Dr. Sharma had
access to plaintiff's medical records when he answered these interrogatories.  (Tr. at 218-219.)
The first interrogatory asked Dr. Sharma,

> You noted tenderness to palpation of the cervical spine and paravertrabral region
> as well as pain on forward flexion at 30 degrees, extension at 20 degrees, lateral
> rotation of 70 degrees and lateral bending of 30 degrees.  You stated all these
> maneuvers elicited pain.  Further, you noted dynamometer measurement of grip
> strength of right hand as 5/0/0 and in the left hand 10/5/5.  You also noted
> decreased sensation to pin prick in thumb, middle and index finger of both hands.

> Please review 1.04A of the Listing of Impairments.  I have enclosed a copy of that
> for your review.  Taking into account of all her symptoms, isn't her condition
> equivalent to that described in 1.04A in the sense that she is likely to have a disk
> problem in the neck and that she has muscle weakness demonstrated on grip
> testing as well as sensory loss in the upper extremities plus low back problems?

(Tr. at 218).

           In response, Dr. Sharma answered, "Yes."  (Tr. at 218.)

           Interrogatory no. 2 asked,

> In light of your findings regarding grip strength and loss of sensation particularly
> in the right hand isn't it problematic that she could use her right hand for reaching
> overhead, reaching (other), handling, fingering, feeling and push/pull even
> "occasionally" as you stated at page 11?  Another way of asking this would be
> since the term "occasionally" is described as "up to 1/3" wouldn't she at times be
> capable doing those activities quite a bit less than 1/3 of the time during an eight
> hour day?

(Tr. at 218.)

           Dr. Sharma answered, "yes."  (Tr. at 218.)

1     Interrogatory no. 4 asked Dr. Sharma, "A report in the file at page 11 of Exhibit

2  1F from a chiropractor, Dr. Bolger-Garrison stated that she should avoid activities that include

3  prolonged or repetitive head and neck flexion (looking down).  In light of your findings do you

4  agree with this additional limitation?"  (Tr. at 218-219.)  Dr. Sharma answered, "yes."  (Tr. at

5  219.)

6     Plaintiff argues that the ALJ improperly rejected Dr. Sharma's opinions contained

7  in the interrogatories listed above.

8     The weight given to medical opinions depends in part on whether they are

9  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

10  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

11  more weight is given to the opinion of a treating professional, who has a greater opportunity to

12  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

13  Cir. 1996).

14     To evaluate whether an ALJ properly rejected a medical opinion, in addition to

15  considering its source, the court considers whether (1) contradictory opinions are in the record;

16  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a

17  treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81

18  F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be

19  rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

20  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

21  examining professional's opinion (supported by different independent clinical findings), the ALJ

22

23     [2]  The regulations differentiate between opinions from "acceptable medical sources" and
"other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24  psychologists are considered "acceptable medical sources," and social workers are considered
"other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26  accordingly are given less weight than opinions from "acceptable medical sources."

6

1    may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

2    Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

3    weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

4    2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

5    supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

6    (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

7    881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

8    insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

9           Evidence raising an issue requiring the ALJ to investigate further depends on the

10   case.  Generally, there must be some objective evidence suggesting a condition which could have

11   a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th

12   Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th

13   Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate

14   inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

15          The ALJ can develop the record by (1) making a reasonable attempt to obtain

16   medical evidence from the claimant's treating sources, (2) ordering a consultative examination

17   when the medical evidence is incomplete or unclear and undermines ability to resolve the

18   disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4)

19   continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242

20   F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a

21   consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128

22   (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when

23   necessary to resolve the disability issue.  See Reeves v. Heckler, 734 F.2d 519, 522 (11th

24

25          [3]  The factors include: (1) length of the treatment relationship; (2) frequency of
     examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

7

Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

The ALJ rejected Dr. Sharma's opinion that plaintiff's impairment or combination

of impairments met or equaled an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1 for the

following reasons:

> The claimant does not have the necessary x-ray or clinical findings or signs that
> would meet or equal the musculoskeletal listings or any other listing of
> impairments.  The undersigned has considered the attorney's argument that the
> claimant meets or equals Listing 1.04A and finds that the evidence does not exist
> to support this.  As far as equally Listing 1.04A for which Dr. Sharma checked the
> "yes" block, the interrogatories are not considered valid as Dr. Sharma appears to
> have just gone through the report, completing everything with a "yes" answer.
> His own examination does not support his responses to the attorney's questioning.
> While Dr. Sharma did find the claimant had decreased grip strength (which is
> discussed in greater detail below), this was the result of a diagnosis of carpal
> tunnel syndrome and that is not related to any disc problem.  There is no evidence
> of nerve root compression, she has no atrophy with weakness and she does not
> have positive straight leg raising test.  She has minimal sensory deficits.  Findings
> have been minimal, and the Listing has not been met, or even close to equaling the
> listing.

(Tr. at 18).[4]

Plaintiff argues that the ALJ's assertion that Dr. Sharma merely checked the "yes"

boxes without regard to his own examination is without foundation and based on unfounded

speculation.  Plaintiff argues that the ALJ is not a physician and was in no position to discredit an

equivalency finding by a neurological specialist.

Listing 1.04 defines spine disorders as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,
> spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral
> fracture) resulting in compromise of a nerve root (including the cauda equina) or
> the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back, positive straight-leg

_____

[4]  The court might add that the interrogatories are grossly leading; one word response,
without analysis, makes Dr. Sharma look like an advocate.

raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or

C. Lumbar spinal stenosis resulting in pseudo-claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Because plaintiff's condition involved her lower back, she would have to have a positive straight-leg raising test for a Listing 1.04A. Dr. Sharma performed the straight leg test on plaintiff with a negative result. (Tr. at 206.)[5] Accordingly, plaintiff's back condition is not equivalent to Listing 1.04A.

Dr. Sharma did not find that plaintiff had spinal arachnoiditis. See http://www.spineuniverse.com/displayarticle.php/article180.html (arachnoiditis is caused by an inflammation of the arachnoid lining – one of the 3 linings that surround the brain and spinal cord; this condition is characterized by severe stinging and burning pain and neurologic problems.) Plaintiff's other medical records do not state that she had this condition. See October 17, 2005, Social Security Consultative Orthopedic Evaluation by Dr. Mitchell (Tr. at 178-182); May 12, 2005, Qualified Medical Evaluator Report by Tracy D. Cole, D.C. (Tr. at 169-177); December 16, 2004, report by Dr. Bolger, D.C (Tr. at 121-125); treatment notes (Tr. at 193-202). Accordingly, plaintiff's back condition is not equivalent to Listing 1.04B.

Turning to Listing 1.04C, the inability to ambulate effectively is "an extreme limitation of the ability to walk" or "having insufficient lower extremity functioning ... to permit

_____

[5] The record contained other evidence of straight leg tests by plaintiff. On April 12, 2005, plaintiff was examined by Tracy D. Cole, D.C. Plaintiff's straight and sitting tests were positive. (Tr. at 174). On October 17, 2005, a Social Security Consultative Orthopedic Evaluation was performed by Dr. Mitchell. Plaintiff had a negative sitting straight leg test but a positive supine straight leg test. (Tr. at 180.) In December 2004, plaintiff was examined by Dr. Bolger, D.C. At that time, plaintiff's seated straight leg raise test was negative. (Tr. at 122). The April 12, 2005, positive sitting and supine straight leg test was not sufficient evidence on which to find that plaintiff's condition was equivalent to Listing 1.04.

independent ambulation without the use of hand-held assistive device(s) ....”  Listing

1.00(B)(2)(b)(1).  Effective ambulation, on the other hand, is characterized by the ability to

sustain “a reasonable walking pace over a sufficient distance to be able to carry out activities of

daily living [,]” “travel without companion assistance[,]” use public transportation, shop, and

climb a few steps at a reasonable pace.  Listing 1.00(B)(2)(b)(2).

Dr. Sharma found that plaintiff was able to perform activities like shopping,

traveling without a companion for assistance, ambulating without using a wheelchair, walker,

canes or crutches, walking a block at a reasonable pace on rough or uneven surfaces, using public

transportation and climbing a few steps at a reasonable pace with the use of a single hand rail.

(Tr. at 210.)  Based on these findings, plaintiff could ambulate effectively.  For that reason, her

back condition was not equivalent to Listing 1.04C.

For the reasons discussed above, the court finds that the ALJ had clear and

convincing reasons supported by substantial evidence to reject Dr. Sharma’s opinion that

plaintiff’s condition was equivalent to Listing 1.04.

Plaintiff next argues that the ALJ improperly rejected Dr. Sharma’s carpal tunnel

diagnosis.  In his original report, Dr. Sharma diagnosed plaintiff with bilateral carpal tunnel

syndrome.  (Tr. at 208.)  Dr. Sharma found that plaintiff’s grip strength in her right hand was

5/0/0 pounds.  (Tr. at 205.)  Her left hand grip strength was 10/5/5.  (Tr. at 205.)  Plaintiff had a

positive Tinel test at both wrists.  (Tr. at 207.)  He found that plaintiff could “occasionally”

perform a variety of work related tasks with her left and right hand.  (Tr. at 213.)  As discussed

above, in response to the interrogatories submitted by plaintiff’s counsel, Dr. Sharma stated that

plaintiff could perform these activities with her right hand “quite a bit” less than occasionally.

(Tr. at 218.)

As to Dr. Sharma’s findings regarding plaintiff’s carpal tunnel syndrome, the ALJ

found,

\\\\\

10

1
2
3
4

> The consultive examiner, Dr. Sharma, diagnosed bilateral carpal tunnel syndrome due to positive Tinel's.  It is noted that no other treating or examining source has diagnosed CTS nor has she requested any work-up.  Additionally, giving rise to the claimant's effort during the examination was her right grip strength of only 5/0/0. This is so extreme as to appear implausible.  She has no associated muscle atrophy as one would expect with such an inability to grip anything as this would indicate.

5  (Tr. at 21.)

6        In rejecting Dr. Sharma's opinion, the ALJ appears to have rejected his opinion

7  contained in the response to the interrogatories as well as from the original report.  The ALJ

8  appears to have doubted the carpal tunnel syndrome diagnosis and the measurement of plaintiff's

9  grip strength.

10       Plaintiff argues that the ALJ failed to acknowledge that she had consistently

11 complained of hand pain and numbness and that every medical provider found reduced grip

12 strength.  Two of the examining doctors noted some reduced grip strength, see October 17, 2005,

13 Social Security Evaluation, Dr. Mitchell (Tr. at 181), May 12, 2005, Qualified Medical Examiner

14 Report, Tracy Cole, D.C. (Tr. at 173), but did not diagnose plaintiff with carpal tunnel syndrome.

15 The only mention of reduced grip strength in plaintiff's treatment notes is from August 30, 2006,

16 when an examination revealed reduced grip strength.  (Tr. at 193.)

17       If plaintiff's grip strength were as weak as reported by Dr. Sharma (5/0/0), it

18 would have impacted her ability to perform the most simply daily tasks.  That plaintiff did not

19 seek treatment for this condition undermines the carpal tunnel syndrome diagnosis as well as the

20 results of Dr. Sharma's grip strength test.  That no other doctor diagnosed plaintiff with this

21 condition also undermines the diagnosis.  For these reasons, the court finds that the ALJ had

22 clear and convincing reasons, supported by substantial evidence, for rejecting Dr. Sharma's

23 opinions regarding carpal tunnel syndrome.

24       Plaintiff also argues that the ALJ did not address Dr. Sharma's opinion that she

25 should avoid repetitive neck and head flexion, as stated in his response to interrogatories.

26 Plaintiff also argues that the ALJ did not directly reject Dr. Sharma's assessed manipulative and

1  postural limitations.  It is unclear what manipulative and postural limitations plaintiff is referring

2  to, as it appears that the ALJ considered all those diagnosed by Dr. Sharma.

3              Dr. Sharma's original report diagnosed plaintiff with chronic neck pain.  (Tr. at

4  208.)  The "Medical Statement of Ability to do Work-Related Activities" form he completed did

5  not mention any limitation regarding neck or head flexion.  (Tr. at 211-217.)  This form did not

6  contain a section specifically asking Dr. Sharma to rate plaintiff's ability to perform work-related

7  activities based on her ability to look up and down (flexion).  However, it contained a section for

8  Dr. Sharma to address any other work-related activities affected by any other impairments.  (Tr.

9  at 210.)  Dr. Sharma did not write in this section.  (Tr. at 210.)

10             Interrogatory no. 4 was based on a report by Dr. Bolger-Garrison who found, in

11 part, that plaintiff should avoid activities that included prolonged repetitive head and neck

12 flexion.  (Tr. at 124).  The ALJ afforded Dr. Bolger-Garrison's report no weight because no

13 evidence in the record supported her findings of limitations in sitting, standing and walking.  (Tr.

14 at 21.)  As will be discussed infra, the ALJ's decision to reject Dr. Bolger-Garrison's report is

15 supported by substantial evidence because her findings are not supported by the record.  Because

16 Dr. Sharma initially did not find that plaintiff had any flexion limitations, the only evidence in

17 the record supporting his later opinion that she did is Dr. Bolger-Garrison's unsupported report.

18 While the ALJ did not specifically address this issue, the court finds that his implicit rejection of

19 this limitation is supported by substantial evidence in the record.  For this reason, any error by the

20 ALJ in failing to mention it in his report was harmless.  Curry v. Sullivan, 925 F.2d 1127, 1121

21 (9th Cir. 1990) (an error which has no effect on the ultimate decision is harmless).

22             B.  Whether the ALJ Failed to Credit Plaintiff's Testimony

23 _____ Plaintiff argues that the ALJ failed to credit her testimony.

24             The ALJ determines whether a disability applicant is credible, and the court defers

25 to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

26 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

1   credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

2   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

3   supported by "a specific, cogent reason for the disbelief").

4              In evaluating whether subjective complaints are credible, the ALJ should first

5   consider objective medical evidence and then consider other factors.  Vasquez v. Astrue, 572

6   F.3d 586, 591 (9th Cir. July 8, 2009);  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en

7   banc).  The ALJ may not find subjective complaints incredible solely because objective medical

8   evidence does not quantify them.  Bunnell at 345-46.  If the record contains objective medical

9   evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature

10  of the alleged symptoms, including aggravating factors, medication, treatment, and functional

11  restrictions.  See Vasquez, 572 F.3d at 591.  The ALJ also may consider the applicant's: (1)

12  reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately

13  explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily

14  activities.[6]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61

15  FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party

16  testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony

17  and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792

18  (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han

19  v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.

20  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that

21  her impairment "could reasonably have caused some degree of the symptom."  Vasquez, 572

22  F.3d at 591, quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80 F.3d

23

24          [6]  Daily activities which consume a substantial part of an applicants day are relevant.
    "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
25  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
    any way detract from her credibility as to her overall disability.  One does not need to be utterly
26  incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
    (quotation and citation omitted).

1   at 1282.  Absent affirmative evidence demonstrating malingering, the reasons for rejecting

2   applicant testimony must be specific, clear and convincing.  <u>Vasquez</u>, 572 F.3d at 591.

3              At the hearing, plaintiff testified that since her surgery for her torn rotator cuff in

4   January 2004, she had a limited range of motion, weakness and numbness.  (Tr. at 231.)  Plaintiff

5   testified that she could not reach or extend very far.  (Tr. at 232.)  She can not reach behind

6   herself.  (Tr. at 232.)  She feels pain in her shoulder, neck and back.  (Tr. at 232.)  At the hearing,

7   plaintiff testified that her shoulder pain was at a level six or seven, with ten being the most

8   severe.  (Tr. at 233.)  This is the level of pain she experiences daily, while it sometimes gets up to

9   a ten.  (Tr. at 233.)

10             Plaintiff testified that she rarely drives.  (Tr. at 236.)  She tries to take short walks,

11  which are 30 feet up the street and back.  (Tr. at 236.)  She cannot take these walks on a daily

12  basis.  (Tr. at 236.)  During the day, she is either laying down or sitting.  (Tr. at 237.)   On the

13  days she does not walk, she has no activity at all.  (Tr. at 237.)  Plaintiff testified that these

14  limited daily activities were caused by her low back pain.  (Tr. at 237.)

15             Plaintiff testified that she has frequent headaches.  (Tr. at 239.)  She has severe

16  headaches twice a month and small headaches a few times a week.  (Tr. at 239.)  Plaintiff

17  testified that the headaches seem to be caused by her neck.  (Tr. at 239.)

18             She watches television during the day.  (Tr. at 240.)  She can sit for ten to twenty

19  minutes before she has to change positions.  (Tr. at 240.)  Her back pain or shoulder pain causes

20  her to have to change positions.  (Tr. at 240.)   Plaintiff testified that she thought her medical

21  problems were getting worse.  (Tr. at 241.)

22             The ALJ found plaintiff's testimony regarding her pain and functional limitations

23  not fully credible for two reasons.  First, the ALJ found that her daily activities could not be

24  objectively verified with any reasonable degree of certainty.  (Tr. at 21).  Second, the ALJ found

25  that even if plaintiff's daily activities were as limited as alleged, it was difficult to attribute that

26  degree of limitation to her medical condition, in view of the relatively weak medical evidence

14

1  and the other factors discussed in the decision.  (Tr. at 21.)

2         That plaintiff's daily activities could not be objectively verified was not a valid

3  ground on which to reject plaintiff's testimony.  However, the court finds that the ALJ had clear

4  and convincing reasons, supported by substantial evidence, for finding that the medical evidence

5  did not support her testimony.

6         Regarding the medical evidence, the ALJ observed that Dr. Mitchell who saw

7  plaintiff on October 17, 2005, found that she could stand and walk six hours in an eight hour day,

8  sit without restriction, and lift and carry ten pounds frequently and twenty pounds occasionally.[7]

9  (Tr. at 20, 182.)  The ALJ also observed that Dr. Sharma found that plaintiff could frequently

10 carry up to 10 pounds and occasionally carry up to 20 pounds, stand and walk for six hours in an

11 eight hour day, sit six hours in an eight hour day with normal breaks and occasionally reach and

12 handle.  (Tr. at 20, 212.)

13        The ALJ acknowledged the Permanent and Stationary Report by Cecilia Bolger-

14 Garrison D.C dated December 16, 2004.  Dr. Bolger-Garrison described plaintiff's work

15 restrictions as follows:

16        1.  The patient is unable to perform any work or activities utilizing her right upper
          extremity. This includes, but is limited to (limitation is 100% if not detailed by
17        amount of weight, number of repetitions, or time spent): overhead work, lifting
          over 5 pounds, reaching, pulling/pushing, carrying, washing, cleaning,
18        gripping/grasping, support of body weight, shoulder height work, sweeping,
          vacuuming.
19
20        2. The patient is unable to perform greater than 30 minutes of repetitive bending
          of the waist, or more than 10 minutes of prolonged bending.

21        3.  The patient should avoid whenever possible sitting for duration greater than 45
          minutes without a 5 minutes break or standing or walking.
22
23        4.  The patient should avoid continuous walking greater than 15 minutes, or
          prolonged standing greater than 20 minutes.

24        5.  The patient should avoid activities that include prolonged repetitive head and

25

26      [7]  Dr. Mitchell also write in his report that "[t]here is some question as far as her complete
     cooperation on the motor exam today."  (Tr. at 182.)

1   neck flexion (looking down).

2       6.  The patient should avoid twisting/turning of the torso combined with moderate
3   to strenuous physical exertion of force.

4   (Tr. at 124.)

5       Dr. Bolger-Garrison also included a "Approximate Disability" rating:

6       Right Shoulder Rating: Approximately 90% Limitation of Work.
    Low Back Rating: Approximately 50% Limitation to Light Work.
7   Neck Rating: Approximately 40% Limitation to Sedentary Work.

8   (Tr. at 125).

9       The ALJ did not give any weight to Dr. Bolger-Garrison's report because it was

10  inconsistent with the record as a whole and with the physician's assessment.  (Tr. at 21.)

11      While Dr. Mitchall and Dr. Sharma found that plaintiff had some physical

12  limitations, they were clearly not as extreme as those described by plaintiff at the hearing.  These

13  reports did not support plaintiff's testimony that her pain was so bad that she generally could

14  only lay or sit and watch television during the day.  The ALJ was not unreasonable in not giving

15  weight to Dr. Bolger-Garrison's report because it was inconsistent with the record.  In any event,

16  while this report was more supportive of plaintiff's complaints of pain, it also did not support

17  plaintiff's testimony regarding her physical activities.  In addition, Dr. Bolger-Garrison found

18  that plaintiff's limitations were largely based on her shoulder problems, whereas plaintiff

19  testified that her physical limitations were primarily caused by lower back pain.

20      In finding plaintiff's description of her pain exaggerated, the ALJ observed that

21  while there was some muscle tenderness and some limitation of motion, there was no evidence of

22  atrophy, muscle weakness or severe sensation changes or reflex changes.  (Tr. at 20.)  Muscular

23  atrophy and muscle weakness would be signs of an inactive, incapacitated individual, which is

24  how plaintiff described herself.  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) ("In

25  addition, the ALJ noted that Meanel did not exhibit muscular atrophy or any other physical signs

26  of an inactive, totally incapacitated individual.")

16

1    Plaintiff argues that there was evidence of muscle weakness as evidenced by her

2    decreased grip strength on repeated testing.  While this is true, these findings were made in

3    support of the carpal tunnel syndrome diagnosis.  The record contains no evidence linking

4    plaintiff's neck and back pain to her carpal tunnel syndrom.

5    Plaintiff also argues that Dr. Cole observed that plaintiff had a weak right

6    shoulder muscle.  (Tr. at 173.)   While this is true, Dr. Sharma's 2007 report makes no mention

7    of muscle weakness or atrophy.  (Tr. at 203-208.)

8    The ALJ also pointed out that medical tests did not support plaintiff's complaints

9    of pain.  The ALJ observed that a March 31, 2006, CT scan of plaintiff's lumbar spine found

10   mild canal stenosis at L4-5 secondary to annular bulging and minimal bilateral facet hypertrophy

11   and minimal dextroscoliosis of the lumbar spine, which could be due to positioning.  (Tr. at 20,

12   199.)  The court agrees that plaintiff's medical records contained no evidence of an injury

13   supporting the level of pain she claimed caused her lack of physical activities.

14   For the reasons discussed above, the court finds that plaintiff's medical conditions

15   could not have reasonably caused the degree of pain she testified to suffering at the hearing.  The

16   ALJ properly relied on the evidence of her medical conditions in finding that her testimony

17   regarding her pain and daily activities was not credible.

18   The ALJ also observed that plaintiff had received only intermittent treatment for

19   her impairments and had gone for long periods with no treatment at all.  (Tr. at 199.)  The ALJ

20   noted that after her initial post-op follow-up and recovery, plaintiff failed to attend appointment

21   after appointment.  (Tr. at 20, 128-131.)  These records indicate that plaintiff failed to report for

22   appointments on April 22, 2004, June 17, 2004, July 1, 2004 and August 26, 2004.  (Tr. at 128-

23   131.)  The ALJ observed that plaintiff did not seek any further treatment for her shoulder

24   complaints after her last appointment with Dr. Meyers on July 15, 2004, until she was seen at Dr.

25   Budhram's office on December 13, 2005, which coincided with her request for the hearing of

26   December 5, 2005.  (Tr. at 20.)  While plaintiff was seen by several medical professionals during

17

this time, they were consultations regarding plaintiff's efforts to seek workers compensation and disability benefits.  On April 12, 2005, plaintiff told Dr. Cole that she took pain medication once a day (Tr. at 170), although there is no record that this was prescription pain medication.

Considering the degree of pain plaintiff testified to at the hearing, the court finds that the ALJ properly found that her failure to seek treatment for 1 ½ years undermined her credibility.  That plaintiff sought treatment only at the time she sought her disability hearing also undercuts her claims of extreme pain.

The ALJ also found that plaintiff's lack of employment history negatively effected her credibility:

> Further, a review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing employment is actually due to medical impairment.

(Tr. at 21.)

At the hearing, plaintiff described her work history as follows.  In the summer of 1993 she worked as a waitress at Plain River Casino.  (Tr. at 228.)  In 1995, she worked as a daycare provider.  (Tr. at 228.)  In 1994, she worked for one month pruning bushes.  (Tr. at 228.)  In 1998 she did some home remodeling.  (Tr. at 229).  In 1999, she went to work at the Welfare Work Program and did janitorial work.  (Tr. at 229.)  The ALJ did not err in finding that plaintiff's spotty work history undermined her credibility.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

For the reasons discussed above, the court finds that the ALJ gave clear and convincing reasons supported by substantial evidence for failing to credit plaintiff's testimony regarding the nature and extent of her pain and her functional limitations.

C.  Whether the ALJ Failed to Properly Assess Plaintiff's RFC

Plaintiff argues that the ALJ failed improperly found her capable of doing her past work or, in the alternative, not disabled based on the grids without the expert testimony of a

18

1    vocational expert.

2         The ALJ found that plaintiff had the RFC to lift and carry 10 pounds frequently

3    and 20 pounds occasionally; stand and walk six hours in an eight-hour day; sit six hours in an

4    eight hour day; occasionally climb ropes,[8] and scaffolds and occasionally crawl; frequently climb

5    ramps, stairs and ladders, balance, stoop, kneel, and crouch, and occasionally reach overhead

6    with her right upper extremity.  (Tr. at 18.)  The ALJ found that in comparing plaintiff's RFC

7    with the physical demands of being a day care provider, her past work, plaintiff was capable of

8    performing this work.  (Tr. at 22.)

9         In the alternative, the ALJ found that plaintiff was capable of performing light

10   work.  (Tr. at 22.)

11        In the alternative, the claimant is a younger individual, with a 10th grade
          education and unskilled work background, and is capable of light work.
12        Therefore, Vocational Rule 202.17 applies.  The limitation to the right upper
          extremity would not substantially reduce the base of light work (Social Security
13        Ruling 83012).  As shown by the vocational evidence provided by the Disability
          Determination Service, there are jobs that the claimant could perform with her
14        residual functional capacity (Exhibit 5E/2, 9E/2). Examples of jobs that exist in
          significant number are: silver wrapper, DOT 318.687-018; housekeeping cleaner
15        DOT 323.687-014; photocopying-machine operator DOT 207.685-014; and
          collator operator DOT 208.685-010.  All jobs are light with an SVP-2.

16

17   (Tr. at 22.)

18        At step four, the plaintiff has the burden of showing that he is no longer able to

19   perform his or her past relevant work.  Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002)

20   (citing Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001)).  The ALJ's determination at this

21   step must be based on an examination of plaintiff's "residual functional capacity and the physical

22   and mental demands" of the past relevant work.  Id. (quoting 20 C.F.R. §§ 404.1520(e) and

23

24        [8]  The undersigned is unsure of what was in the ALJ's mind when she found that plaintiff
     could climb ropes.  The undersigned doubts very much that this plaintiff could perform a rope
25   climb, as it is generally performed in gym class or the military.  The undersigned is unaware of
     what ordinary daycare job requires climbing ropes.  However, even though the undersigned
26   discounts the rope climbing finding, this error would not appear to have any effect on the
     conclusion that plaintiff could perform light work as it is defined.

1   416.920(e)).

2   　　　　RFC is an administrative assessment of the extent to which a claimant's medically

3   determinable impairment(s), including any related symptoms, such as pain, may cause limitations

4   or restrictions that may affect his or her capacity to do work-related activities.  See Social

5   Security Ruling FN6 96-8p; see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  "Ordinarily,

6   RFC is the [claimant's] maximum remaining ability to do sustained work activities in an ordinary

7   work setting on a regular and continuing basis[.]" SSR 96-8 (emphasis in original).  RFC

8   represents the most that an individual can do despite his or her limitations or restrictions.  Id.

9   The RFC assessment must be based on all of the relevant medical and other evidence in the case

10  record, such as medical history, medical signs and laboratory findings, the effects of treatment,

11  reports of daily activities, recorded observations, medical source statements, and effects of

12  symptoms.  See SSR 96-8p.  "The RFC assessment must always consider and address medical

13  source opinions." SSR 96-8p.  "Medical opinions are statements from physicians and

14  psychologists or other acceptable medical sources that reflect judgments about the nature and

15  severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and

16  prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  It is the ALJ's duty to evaluate the

17  medical opinions in the record and to explain the weight given to each medical opinion.  See 20

18  C.F.R. §§ 404.1527(d), 416.927(d).

19  　　　　"A claimant must be able to perform her past relevant work either as actually

20  performed or as generally performed in the national economy." Id.  "The Social Security

21  Regulations provide that the ALJ may draw on two sources of information to define the

22  claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a

23  properly completed vocational report." Id.

24  　　　　Light work is defined as follows:

25  　　　　　b) Light work. Light work involves lifting no more than 20 pounds at a time with
　　　　　frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

26  　　　　　weight lifted may be very little, a job is in this category when it requires a good

deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Plaintiff argues that the ALJ erred in finding that she could perform her past work as a day care provider.  In support of this claim, plaintiff argues that her disability report dated February 16, 2005, states that this job involved lifting clients that weighed approximately 100 pounds about ten feet every day.  (Tr. at 49.)   This report also states that this work involved plaintiff having to frequently carry 50 pounds or more.  (Tr. at 49.)

The ALJ erred in finding that plaintiff could perform her past work as a day care provider because this work, as described by plaintiff, was more demanding than light work.  The ALJ made her conclusion without any description of what was involved in being a daycare provider.  However, this error was harmless because, as discussed below, the ALJ properly found, in the alternative, that plaintiff was capable of performing light work.  Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990) (an error which has no effect on the ultimate decision is harmless.)

Plaintiff argues that the ALJ improperly found her not disabled based on the grids without the expert testimony of a vocational expert.

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the grids determine if other work is available.  See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional

\\\\\

21

1   capabilities.[9]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

2   Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  The ALJ, however, is not

3   automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional

4   limitation.  Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged

5   does not automatically preclude application of the grids.");  20 C.F.R. pt. 404, subpt. P, app. 2, §

6   200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience,

7   education, and psychological and physical impairments to determine whether a nonexertional

8   limitation significantly limits plaintiff's ability to work in a certain category.  Desrosiers 846

9   F.2d at 578 (Pregerson, J., concurring).  If so, the ALJ must use a vocational expert. Aukland v.

10  Massanari, 257  F. 3d. 1033 (9th Cir. 2001).

11          Plaintiff argues that the evidence suggested that she suffered nonexertional

12  impairments, including pain, manipulative and postural limitations.  As discussed above, the ALJ

13  properly rejected plaintiff's testimony describing her high pain level.  In arguing that she had

14  manipulative and postural limitations, plaintiff is apparently referring to Dr. Sharma's answers to

15  interrogatories.  As discussed above, the ALJ properly rejected these answers.

16          As discussed above, the reports by Dr. Mitchell and Dr. Sharma were substantial

17  evidence that plaintiff could perform light duty work.  These reports were substantial evidence

18  that the alleged nonexertional limitations did not significantly limit plaintiff's ability to perform

19  the jobs described by the ALJ.  For these reasons, the ALJ was not required to use a vocational

20  expert.

21

22          [9]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
    lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary;
23  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include
    mental, sensory, postural, manipulative and environmental matters which do not directly affect
24  the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper,
    880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has
25  an impairment that limits his or her ability to work without directly affecting his or her strength,
    the claimant is said to have nonexertional (not strength-related) limitations that are not covered
26  by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1    In sum, the court finds the ALJ's assessment is fully supported by substantial

2    evidence in the record and based on the proper legal standards.  Accordingly, plaintiff's Motion

3    for Remand or Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

4    Judgment is GRANTED and the Clerk is directed to enter Judgment for the Defendant.

5    DATED: 09/02/09

6                                          /s/ Gregory G. Hollows

7                                          _____
                                           GREGORY G. HOLLOWS
8                                          U.S. MAGISTRATE JUDGE

9

10   hardy.ss